UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROOSEVELT WILLIAMS,

        Petitioner,

                            CASE NO. 5:08-CV-12583

     v.                        JUDGE JOHN CORBETT O'MEARA
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGGIN,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.     *Factual Background Underlying Petitioner's Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        C.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        D.     *Sentencing Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
               1.      *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
               2.      *Enhancement of Minimum Sentence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
               3.      *Individualized Sentence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               4.      *Proportionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        E.     *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

_____

[1] By Order entered this date, Greg McQuiggin has been substituted in place of Debra Scutt as the proper respondent in this action.

1

2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

F. *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1. *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

G. *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III. <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

2

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and his motion for summary judgment. The Court should also deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Roosevelt Williams is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

2.      On January 23, 2007, petitioner was convicted of third degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(a), after pleading guilty in the Berrien County Circuit Court.   On March 12, 2007, he was sentenced to a term of 44-180 months' imprisonment.

3.      Petitioner sought leave to appeal to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      The trial court violated the Due Process and Equal Protection Clauses by unlawfully scoring 15 points on OV-8, and trial counsel was ineffective in not objecting to the unlawful scoring.

II.     The trial court violated the United States and Michigan Constitutions in sentencing petitioner to 44-180 months.

The court of appeals found no merit to petitioner's claims, and denied him leave to appeal.   *See People v. Williams*, No. 280481 (Mich. Ct. App. Jan. 11, 2008).

4.      Petitioner, proceeding *pro se*, sought leave to appeal the same issues to the Michigan Supreme Court.   The Supreme Court denied petitioner's application for leave to

appeal in a standard order.  *See People v. Williams*, 480 Mich. 1189, 747 N.W.2d 294 (2008).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 26, 2008.  As grounds for the writ of habeas corpus, he raises four sentencing claims and an ineffective assistance of trial counsel claim.

6.      Respondent filed his answer on January 16, 2009.  He contends that petitioner's claims are either not cognizable or without merit.

7.      Petitioner filed a "Petition for Summary Judgment" on April 14, 2010.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arose from his sexual conduct with a fourteen-year old girl. The facts leading to his conviction were accurately summarized in his brief on appeal:

> On January 23, 2007, defendant Roosevelt Lashawn Williams pled [sic] guilty to a charge of 3d-degree criminal sexual conduct – person 13-15 years old at a hearing held before the Hon. Dennis M. Wiley in the Berrien County Trial Court. *Tr. Plea Hearing of 1-23-07, 5, 7, 9-10, 10-11, 12, 13, 15*.  In exchange for his plea, the prosecutor agreed to dismiss a second CSC 3 charge, a charge of 2d-degree criminal sexual conduct  (CSC 2), and to not bring any habitual offender supplements. *Id. at 11*. The prosecutor also agreed to recommend a minimum prison sentence within the computed guidelines range, but no more than 48 months. *Id. at 11-12*. The court accepted the sentence recommendation, but stated it would permit the defendant to withdraw his plea if after reviewing the presentence report it chose not to follow it. *Id. at 13*.
>
> At the hearing, the defendant admitted that (1) on January 9, 2007, in unit 101 or 109 at 42-90 Red Arrow Highway in Lincoln Township, Berrien County, Michigan, he engaged with a girl named Jazzmyne Henry in "sexual activity with someone that was not of age," *Id. at 6-7, 13-14*; (2) he agreed she was 14 years old even though she may have told him otherwise, *Id. at 14*; and (3) he placed his penis inside her vagina and placed his mouth or tongue on her vagina, *Id*. . . . Trial counsel stated that "this was a consensual act" and there "wasn't any force used" by the defendant. *Id. at 15*.
>
> On March 12, 2007, the court sentenced the defendant to a prison term of 44-180 months on the CSC 3 conviction. *Tr Sentencing Hearing of 3-12-07, 15*. The court granted him 63 days of jail credit. *Id. at 15-16*. See also, Judgment of

4

Sentence.

Def.-Appellant's Br. on App., in *People v. Williams*, No. 280481 (Mich. Ct. App.), at 1-2.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16

(2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S.

3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1)

permits a federal habeas court to 'grant the writ if the state court identifies the correct governing

legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of

petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at

413); *see also*, *Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness

of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Sentencing Claims*

In his habeas application, petitioner framed his issues under two main grounds. Within these two grounds are four separate sentencing claims: (1) the trial court erred in scoring 15 points on Offense Variable 8 (OV-8); (2) the trial court violated the rule of *Blakely v. Washington*, 542 U.S. 296 (2004), in enhancing petitioner's minimum sentence; (3) the trial court erred in failing to consider factors specific to petitioner when sentencing; and (4) petitioner's sentence is disproportionate his offense.

1.      *Guidelines Scoring*

In his habeas application, petitioner contends that the trial court erred in scoring 15 points on OV-8. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.      *Enhancement of Minimum Sentence*

Petitioner contends that the court improperly enhanced his minimum sentence in violation of the rule of *Blakely*, 542 U.S. 296, and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference

of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violated the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law, the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool*, 470 Mich. 715, 730, 684 N.W.2d 278, 286 (2004); Mich. Comp. Laws § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan*, 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set

within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, 666 N.W.2d 231, 236 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). The trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool*, 470 Mich. at 730, 684 N.W.2d at 286.

*Blakely* is inapplicable here because *Blakely* is concerned only with the maximum penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730, 684 N.W.2d at 286; MICH. COMP. LAWS § 769.8. Petitioner's plea-based conviction on the charge of third degree criminal sexual conduct, therefore, contained all of the factual findings necessary to impose the statutory maximum (180 months) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned

only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court has explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime-and thus the domain of the jury-by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly exempted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his legal *right* to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based

on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730, 684 N.W.2d at 286. Accordingly, the Court should conclude that the petitioner is not entitled to habeas relief on this claim.

3.    *Individualized Sentence*

Petitioner claims that the trial court based his sentence on inaccurate and incomplete information. He claims that the trial court failed to consider his "strong family support" and "acceptance of responsibility for [the] offense" as indicia of his rehabilitative potential when imposing his sentence. Def.-Appellant's Br. on App., in *People v. Wiliiams*, No. 280481 (Mich. Ct. App.), at 10. Petitioner next claims that the trial court erred in failing to depart downward from the guidelines in consideration of petitioner's mental defect (schizophrenia). *Id.* at 11-12. He also claims that the court erred in failing to assess his rehabilitative potential through "alcohol, drug, and psychiatric treatment." *Id.* at 13. Petitioner claims that the failure of the trial court to consider these circumstances resulted in a violation of his due process rights. *Id.* at 13.

This claim, that the trial court failed to individualize petitioner's sentence, does not state a cognizable claim for habeas relief. His argument that the trial judge focused solely on punishment, and did not give any weight to other recognized sentencing factors such as his

potential for rehabilitation, does not provide a basis for habeas relief. There are four generally recognized purposes of criminal sanctions, and imprisonment in particular: rehabilitation, deterrence, incapacitation, and retribution (*i.e.*, punishment). *See generally*, *United States v. Brown*, 381 U.S. 437, 458 (1965); *Trop v. Dulles*, 356 U.S. 86, 111 (1958) (Brennan, J., concurring); Toni M. Massaro, *Shame, Culture, and American Criminal Law*, 89 MICH. L. REV. 1880, 1890 (1991). However, nothing in the Constitution requires a state to establish its system of criminal sanction to give primacy to any one of these goals. *See Harmelin v. Michigan*, 501 U.S. 957, 999 (1994) (Kennedy, J.) ("[T]he Eighth Amendment does not mandate adoption of any one penological theory."). Thus, so long as the imprisonment is not cruel and unusual under the Eighth Amendment and does not violate some other constitutional guarantee such as the Equal Protection Clause, a state is free to impose imprisonment solely for the purpose of punishment. *Cf. Furman v. Georgia*, 408 U.S. 238, 308 (1972) (Stewart, J., concurring) ("The instinct for retribution is part of the nature of man, and channeling that instinct in the administration of criminal justice serves an important purpose in promoting the stability of a society governed by law.").

Although the Supreme Court has held that individualized sentencing is required in the death penalty context, *see, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), these cases "have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Harmelin*, 501 U.S. at 995 (citing *Eddings v. Oklahoma*, 455 U.S. 104, 110-12 (1982); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *Lockett v. Ohio*, 438

U.S. 586, 602-05 (1978); *Woodson*, 428 U.S. at 303-05). Based on these cases, the *Harmelin* Court explicitly declined to extend the individualized sentencing requirement to non-capital cases. *Harmelin*, 501 U.S. at 996 ("We have drawn the line or required individualized sentencing at capital cases, and see no basis for extending it further."); *see also*, *id.* at 1006 (Kennedy, J., concurring). Thus, the trial court's failure to individualize petitioner's sentence to his specific rehabilitative potential and mental defect was not error. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

4.      *Proportionality*

Petitioner also argues that his sentence is disproportionate to his offense. Petitioner's claim that his sentence violates the Eighth Amendment is without merit. In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent

decisions. In *Harmelin*, 501 U.S. 957, the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005-06.[2] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, thus much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices

---

[2] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

[Rehnquist and Scalia] would have held that the [E]ighth [A]mendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the [E]ighth [A]mendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel*, 445 U.S. at 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id.* at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.). Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside the capital sentencing context. Justice Scalia reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 32 (opinion of

Scalia). In a separate concurrence, Justice Thomas (who was not on the Court when *Harmelin* was decided) expressed agreement with Justice Scalia's view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id.* at 36-37 (opinion of Breyer, J.). Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for the purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005. *See Burnham v. Vasbinder*, No. 04-CV-72784, 2007 WL 2713745, *3 (E.D. Mich. Sept. 17, 2007) (Roberts, J.) (habeas petitioner's disproportionality argument failed where he was sentenced to 8½-15 years for his third degree criminal sexual conduct conviction); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.) (habeas petitioner's disproportionality argument failed where he was sentenced to concurrent

terms of 3-15 years and 7-15 years for convictions of third degree and second degree criminal sexual conduct). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Ineffective Assistance of Counsel*

       1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing of one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . .  that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. *Analysis*

In his habeas application, petitioner contends that his trial counsel was ineffective in failing to object to the scoring of 15 points on OV-8. A score of 15 on OV-8 is appropriate when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MICH. COMP. LAWS § 777.38(1)(a). Petitioner claims he should not have received a score on OV-8 because the victim was not asported, but rather she went to the motel room voluntarily. Pet'r's Br., at 5.

The scoring of 15 points on OV-8 was upheld in *People v. Cox*, 268 Mich. App. 440, 709 N.W.2d 152 (2005). In that case the defendant was convicted of two counts of third-degree criminal sexual conduct for engaging in sexual conduct with a seventeen-year old mentally incapable victim. *Cox*, 268 Mich. App. at 442, 709 N.W.2d at 155-56. The court rejected the defendant's argument that OV-8 was improperly scored. The defendant admitted that the sexual conduct occurred at his house, and though the victim had been to the defendant's house on previous occasions, he was transported there by the defendant. The court reasoned that, "in light of the sexual acts that subsequently occurred there, the transportation of the victim was to a place of greater danger." *Cox*, 268 Mich. App. at 454, 709 N.W.2d at 161.

The scoring of 15 points on OV-8 was also upheld in *People v. Spanke*, 254 Mich. App.

642, 658 N.W.2d 504, (2003). In that case the defendant was convicted of one count of second-degree criminal sexual conduct and two counts of indecent exposure. The court rejected the defendant's argument that the trial court should not have scored 15 points on OV-8 because the victims moved to his home voluntarily. The court found that "'asportation' as used in [MICH. COMP. LAWS] § 777.38(1)(a) can be accomplished without the employment of force against the victim." *Spanke*, 254 Mich. App. at 647, 658 N.W.2d at 508. It reasoned that the trial court properly scored the offense variable because, even if the victims moved to the defendant's home voluntarily, they were still "without a doubt asported to another place or situation of greater danger, because the crimes could not have occurred as they did without the movement of the defendant and the victims to a location where they were secreted from observation by others." *Spanke*, 254 Mich. App. at 648, 658 N.W.2d at 508.

Petitioner claims that the trial court improperly scored 15 points on OV-8 because the victim went to the motel voluntarily. However, as *Cox*, 268 Mich. App. 440, 709 N.W.2d 152, and *Spanke*, 254 Mich. App. 642, 658 N.W.2d 504, indicate force is not required in order for a defendant to receive 15 points on OV-8. Rather, the offense variable requires that the victim be taken to a place or situation of greater danger, whether she goes voluntarily or by force. As indicated in *Cox*, 268 Mich. App. 454, 709 N.W.2d 161, and *Spanke*, 254 Mich. App. at 648, 658 N.W.2d at 508, the fact that the criminal conduct occurred in the location to which the victim was taken is enough to satisfy the place or situation of greater danger requirement of OV-8. Thus, the fact that petitioner's criminal conduct occurred in the motel room made the motel room a place or situation of greater danger, which made the scoring of 15 points on OV-8 proper.

Because OV-8 was scored properly, it was not deficient for petitioner's trial counsel to fail to object to its scoring. Counsel cannot be deficient for failing to make a meritless objection. It follows that trial counsel's failure to object to the scoring of OV-8 was non-prejudicial because a non-error could not result in prejudice to the petitioner. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Summary Judgment*

Petitioner filed a "Petition for Summary Judgment" on April, 14, 2010 asking that the court grant his request for a writ of habeas corpus and immediately release him from prison instead of remanding his case to the trial court for resentencing. He argues that immediate release is the proper remedy because he would have been eligible for parole in 2009 had his minimum sentence been set as he claims it should have been. Because he has already served a term that is longer than his allegedly proper minimum sentence, petitioner claims that he is entitled to release. As discussed above, petitioner's sentencing claims are not cognizable on habeas review or otherwise without merit, and his ineffective assistance of counsel claim with regard to improper sentencing is also without merit. Therefore, the trial court sentenced petitioner properly, he had effective trial counsel, and he is not entitled to habeas relief. Accordingly, the Court should conclude that petitioner is not entitled to immediate release.

G.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a

judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse

to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts this recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability. First, his claim that the trial court improperly scored OV-8 is a question of the court's application of the state's sentencing scheme. The conclusion that questions of state law are not cognizable on habeas review is not reasonably debatable. Second, because, under Michigan law, maximum sentences are set by statute, and petitioner claims that the trial court improperly enhanced his minimum sentence, *Blakely* is inapplicable. Thus, the conclusion that petitioner's minimum sentence was not improperly enhanced is not reasonably debatable. Third, individualized sentencing is required in the death penalty context, but is not otherwise a constitutional right. Thus, the conclusion that petitioner was not entitled to receive an individualized sentence based on his rehabilitative potential and mental defect is not reasonably debatable. Fourth, 180 months

23

is the statutory maximum for third-degree criminal sexual conduct, and petitioner was sentenced according to the sentencing guidelines. Thus, the conclusion that his sentence is proportionate to his offense is not reasonably debatable. Finally, it was proper for the trial court to score 15 points on OV-8 while sentencing petitioner. Thus, the conclusion that trial counsel was effective, despite failing to object to the proper scoring of the offense variable, is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

H.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.   Accordingly, the Court should deny petitioner's application for the writ of habeas corpus and his motion for summary judgment. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   Filing of objections which raise some issues but fail to raise others with

specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES

Dated:7/15/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 15, 2010.